IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KIM CHERRI GIBSON,

      Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

      Defendant.

Case No. 3:14-CV-1170-AA
OPINION AND ORDER

---

Jeffrey H. Baird
Dellert Baird Law Offices, PLLC
P.O. Box 3757
Silverdale, WA 98383
    Attorney for plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Janice E. Herbert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97201

Courtney Garcia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Kim Cherri Gibson brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

On June 24, 2010, plaintiff protectively filed her applications for DIB and SSI. Tr. 23. After the applications were denied initially and on reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 146-47. On November 6, 2012, a hearing was held before the ALJ; plaintiff, represented by counsel, and a vocational expert ("VE") testified. Tr. 40-72. On November 21, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 20-33. Plaintiff requested review of the

decision on December 10, 2012 and submitted new evidence to the Appeals Council in March 2013 through July 2013. Tr. 19, 767-81. After considering the new evidence and admitting it into the record, the Appeals Council declined plaintiff's request for review. Tr. 1-5. Plaintiff filed a complaint in this Court on July 23, 2014.

## STATEMENT OF FACTS

Born on December 10, 1960, plaintiff was 48 years old on the alleged onset date of disability and 51 years old at the time of the hearing. Tr. 31. Plaintiff attended high school through part of the tenth grade, and later obtained her GED. Tr. 32, 44. She previously worked at a care facility called Hilltop Healthcare doing laundry, housekeeping, and dishwashing. Tr. 46. Plaintiff alleges she became disabled on March 1, 2009 as a result of a work-related injury when she was lifting heavy, wet laundry, and suffers from fibromyalgia, back pain, back muscle strain, hypoglycemia, depression, and cognitive issues. Tr. 23, 47, 97.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. <u>Hammock v.</u>

Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions. Martinez v. Heckler, 807 F. 2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

## COMMISSIONER'S DECISION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" during the period of

Page 4 - OPINION AND ORDER

alleged disability. Tr. 25; Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that plaintiff had a "medically severe impairment or combination of impairments," including myofascial syndrome, somatization disorder, mood disorder, fibromyalgia, thoracic sprain, hypothyroidism, tobacco dependence, depression, posttraumatic stress disorder, and personality disorder not otherwise specified with borderline and histrionic traits. Tr. 25-26; Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments did not meet or equal "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Tr. 26; Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ then found that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she should never climb ladders, ropes, or scaffolds. The ALJ also found that she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could perform simple, routine, repetitive work that involves only simple work-related decisions

and routine workplace changes, and could work under only occasional supervision with permission to be off task 5% of the workday, but have no direct interaction with the public and have only occasional interaction with co-workers. Tr. 26.

At step four, the ALJ found that plaintiff could not perform her "past relevant work" in light of her RFC. Tr. 31; 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step five, the ALJ found that jobs existed in the national economy in significant numbers that plaintiff could perform despite her impairments, including work as a laundry folder, garment bagger, and basket filler. Tr. 32; Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)&(f), 416.920(e)&(f). Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Tr. 33.

## DISCUSSION

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for finding plaintiff not fully credible as to the severity of her alleged limitations, and by failing to provide germane reasons for attributing little weight to the opinion of her chiropractor, Tyge Shelby.

Additionally, plaintiff maintains that the new evidence she

submitted to the Appeals Council after the ALJ's decision, which included treatment notes, imaging reports, and two medical source statements, was probative medical evidence that undermined the ALJ's finding that she was not disabled. Tr. 767-81. Further, given that the Appeals Council accepted the new evidence into the record but declined to review plaintiff's case, plaintiff maintains that the Appeals Council should have provided a legally sufficient reason for not finding the new material convincing, remanded her case to the ALJ for consideration of the new material, or remanded her case with an order for payment of benefits.

I.    Plaintiff's Credibility

Plaintiff challenges the ALJ's assessment and conclusion that plaintiff's credibility was at variance with the weight of the evidence, and that the extent of her alleged symptoms were contradicted by her veracity, her level of daily activities, and her good response to conservative treatment.

When a plaintiff has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that plaintiff is not credible is insufficient; the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing a plaintiff's credibility, an ALJ may consider a range of factors, including ordinary techniques of credibility evaluation, such as (1) plaintiff's reputation for lying or prior inconsistent statements concerning symptoms; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) evaluation of plaintiff's daily activities. <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014)(citing <u>Smolen</u>, 80 F.3d at 1284). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the plaintiff's testimony." <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(citation omitted) However, when evidence supports either confirming or reversing an ALJ's decision, the court may not substitute its own judgment for that of the ALJ. <u>See</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1196 (9th Cir. 2004).

A.   Objective Medical Evidence

Plaintiff contends that the ALJ erred in finding a lack of objective medical evidence to support plaintiff's testimony regarding the severity of her impairments and functional impacts. Plaintiff's primary allegation is that "her physical impairments prevent her from performing basic work activities on a regular and continuing basis." Pl.'s Br. at 10. Specifically, plaintiff maintains that her pain prevents her from sitting, standing, or walking for extended periods of time; impacts her activities of daily living; and impacts her ability to concentrate and remember. Id.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he found that plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. Tr. 27.

Once a claimant produces medical evidence of an underlying impairment, an ALJ may not discredit claimant's testimony regarding subjective symptoms merely because they are unsupported by medical evidence. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Nonetheless, an ALJ may consider the

objective medical evidence and the claimant's treatment history in the credibility determination. Smolen, 80 F.3d at 1284. Further, self-limiting behaviors on examination, as well as symptom exaggeration, may detract from a plaintiff's credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Thus, when determining the credibility of a claimant's excess symptom testimony, the ALJ may consider evidence of self-limitation. Osenbrock v. Apfel, 240 F.3d 1157, 1165-66 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001) (exaggeration and failure to give maximum or consistent effort during a medical evaluation can be a basis for an adverse credibility finding).

Here, the ALJ relied on evaluations by treating and examining physicians that showed that plaintiff's level of physical functioning contradicted the alleged severity of her pain and limitations. Tr. 27-30. For example, the ALJ relied on chart notes from treating physician Theodore Kruse, M.D., who examined plaintiff on three separate occasions, beginning on May 1, 2009, regarding her back pain. Tr. 27, 416-17. Dr. Kruse noted that plaintiff walked from her car to the clinic without visible difficulty and showed impressive arm strength and body movements without obvious pain or difficulty. Id. Dr. Kruse

diagnosed plaintiff with myofascial syndrome and somatization disorder, and determined that plaintiff likely had an acute viral syndrome with myalgias. Tr. 27, 417. The ALJ noted that Dr. Kruse expressed that plaintiff was very resistant to his recommendations. Tr. 27, 423.

The ALJ also relied on two physiatry opinions. In July 2009, Jon Swift, D.O. examined plaintiff and determined that she had 5/5 motor strength in her upper and lower extremities. Tr. 27, 436-38. Dr. Swift diagnosed plaintiff with a probable cervicothoracic sprain and recommended physical therapy and work hardening. Tr. 27, 438. He also reassured plaintiff that she had a normal neurological examination. Tr. 438. Dr. Swift examined plaintiff on two subsequent visits, noting that plaintiff had done well with physical therapy was ready for regular work duty by August 2009. Tr. 27, 433-35. Further, the ALJ relied on the medical opinion of Phillip Wallace, M.D., a second physiatrist, who similarly noted plaintiff's high level of motor strength in her upper and lower extremities. Tr. 28, 579.

To further assess plaintiff's physical limitations, the ALJ relied on an internal medicine IME conducted by Michael Henderson, D.O., in July 2012. Tr. 28. Dr. Henderson examined plaintiff, noting normal muscle tone, gait, and strength, and

imposed no physical limitations for plaintiff. Tr. 28, 726-27. Dr. Henderson noted that plaintiff gave poor effort at times during functional testing. Tr. 28, 727. He also added that plaintiff's symptoms of pain were excessive, noting in the evaluation that plaintiff's perception of her health was much worse than physical exam testing and the medical records would suggest. Id. Dr. Henderson was unable to confirm plaintiff's fibromyalgia diagnosis with only 9 out of 18 tender point sites met. Id. Moreover, with regard to plaintiff's functional limitations, Dr. Henderson noted that he could not "find objective medical evidence to limit sitting, standing, walking, pushing, pulling or lifting." Id.

Plaintiff is correct that in May 2009, Dr. Kruse imposed duty restrictions after her alleged work injury to her back; however, the record shows that such restrictions were only temporary, as plaintiff was released to full duty work in August 2009. Tr. 416, 433, 435. Thus, the ALJ explained that plaintiff's allegation of pain at a level causing significant functional limitations was contradicted by the objective medical evidence.

Besides relying on the objective medical evidence in the record of plaintiff's physical condition, the ALJ discredited

plaintiff's testimony based on findings that she intentionally produced spasms, exaggerated her symptoms, and gave poor effort during testing. Tr. 28-31, 726-27, 742-44, 751.

The Court finds that the ALJ provided sufficient objective medical evidence to discount plaintiff's alleged severity of pain and attendant physical limitations.

B.  Somatization Disorder

Plaintiff contends that the ALJ erred by relying on the lack of objective evidence to support her testimony about the severity of her impairments and functional limitations when he also found that she had severe somatization disorder and personality disorder. In other words, plaintiff contends that the behaviors the ALJ found undermined plaintiff's credibility, such as intentional spasms and poor effort, were legitimately caused by her mental disorders. Plaintiff further maintains that the ALJ erred by not calling a medical expert to testify about whether plaintiff's mental impairments could affect and/or cause her physical symptoms and impairments to the extent she described.

Plaintiff has been diagnosed with mental health conditions including personality disorder, somatization disorder, posttraumatic stress disorder, and depression. Tr. 417, 751. The

ALJ accounted for these conditions, including somatization disorder, in his assessment, determining that they were severe. Tr. 25-26. The ALJ relied on a neuro-psychological consultative examination by clinical psychologist, Michelle Whitehead, Ph.D. in July 2012 to determine the extent of plaintiff's mental conditions. Tr. 28, 741-51. Dr. Whitehead gave the opinion that plaintiff's spasms were intentionally produced. Tr. 742. Further, Dr. Whitehead noted that plaintiff was overly dramatic, histrionic, and tearful, and suggested that plaintiff did not put forth sufficient effort during periods of psychometric testing. Tr. 29-30, 743, 751. Based on her personal observations and the testing results, Dr. Whitehead concluded that plaintiff could perform simple tasks and generally had mild to moderate limitations in the work setting. Tr. 30, 738-39.

The ALJ also relied on Deschutes County Mental Health records, where plaintiff had sought individual and group therapy. The ALJ noted records where plaintiff stated that she was doing well, had identified coping skills, and her mental health issues were not dire. Tr. 29. The ALJ also cited the opinions of State agency psychologist Bill Hennings, Ph.D., in September 2010, and Dr. Sharon Eder in October 2010, both of whom concluded that plaintiff had mild limitations pertaining to

daily living, social functioning, concentration, persistence, and pace. Tr. 30, 82-83, 89.

Furthermore, the ALJ's observation of plaintiff at the hearing affected his credibility determination; he noted that plaintiff's spams occurred almost exclusively when she was testifying about her muscle spasms. Tr. 31. The ALJ also questioned plaintiff's credibility based on her inconsistent statement. Id. For example, during her examination in 2012, plaintiff told Dr. Whitehead that she watched television and checked email on the computer; at the administrative hearing, plaintiff denied ever owning a computer or using email. Tr. 31, 59. Finally, the ALJ noted that the record contained a statement from plaintiff's friend, LaDonna Moore, stating that plaintiff had a history of overreacting. Tr. 29.

The Court finds that the ALJ did not fail to consider the implications of plaintiff's somatization disorder or rule out conversion disorder; further, his finding that plaintiff was not fully credible as to the extent of her limitations was supported by substantial evidence. The weight of the evidence relied on by the ALJ reflected plaintiff's physical strength and condition, medical clearance to return to work, and neurological status confirming her ability to work. Moreover, the psychologists who

evaluated plaintiff's case did not identify functional impairments that would prevent plaintiff from working based on her somatization disorder.

Finally, the ALJ did not err in failing to call an expert to opine on the connection between plaintiff's somatization disorder and her physical limitations, when the weight of the objective medical evidence did not support the existence of disabling limitations. Thus, the record was not so ambiguous as to require further development. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).

C.   Daily Activities

Plaintiff claims that severe back pain and fibromyalgia pain impacts her ability to get dressed, cook, and perform chores, and prevents her from functioning for much of the day. Pl.'s Br. at 10; Tr. 30. Plaintiff testified that her pain prevents her from doing yard work, that she does no dish washing, and does not pay bills. Tr. 58-59. Thus, plaintiff maintains that the ALJ erred by relying on what he determined were fairly normal daily activities to find the extent of plaintiff's alleged limitations not fully credible.

The ALJ may consider the claimant's daily activities and the observations of third parties with personal knowledge about

the claimant's functional limitations. Smolen, 80 F.3d at 1284. When a claimant's daily activities "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," performance of those activities may serve as a basis for discrediting a claimant. Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

The ALJ found that plaintiff's claimed inability to do much of anything was inconsistent with her daily activities throughout the disability period. This finding is supported by substantial evidence in the record. The ALJ determined that plaintiff participated in daily activities including knitting, reading, walking, sweeping, vacuuming, grooming without assistance, preparing simple meals, putting her clothes in the dryer, and watching her mother, all of which were deemed inconsistent with the level of impairment plaintiff alleges. Tr. 30. The ALJ further relied on a report by plaintiff to her counselor that she had outings over the holiday weekend and was able to get out of the house despite feeling depressed. Tr. 29, 675. Similarly, the ALJ relied on plaintiff's July 2010 statements to her health care providers that she enjoyed walking, and her October 2010 statement that she went for a walk every day that month. Tr. 28.

The ALJ could reasonably conclude that plaintiff's activities, including engaging in personal care without assistance, doing laundry, performing general chores in the home albeit sometimes experiencing pain, and making grocery purchases at the store undermined her claims that her symptoms were so severe as to prevent her from working. It was also reasonable for the ALJ to conclude that plaintiff's level of activity was inconsistent with her alleged limitations based on plaintiff's July 2010 statements that she enjoyed knitting, reading, and walking, and that her primary form of exercising is cycling. Tr. 28, 535.

In addition to the reasons above, the ALJ relied on Dr. Whitehead's neuropsychological evaluation, which states: "The claimant's activities of daily living and socialization were objectively assessed (Vineland II) and it was determined that she does not have any major impairment in these areas." Tr. 743. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas, 278 F.3d at 959 (internal citation omitted). The Court finds that the ALJ provided clear and convincing reasons why plaintiff's activities of daily living undermined her statements about the severity of her limitations.

D.   Conservative Treatment

Plaintiff maintains that the ALJ's finding that her credibility was undermined based on her good responses to conservative treatment was not supported by substantial evidence in the record.[1]

Evidence of conservative treatment can be used to discount a claimant's testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)(citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995)).

Evidence in the record supports the ALJ's finding that the treatment obtained by plaintiff for her back, neck, arm, and chest pain has been conservative, consisting predominantly of chiropractic sessions, physical therapy, massage therapy, and medication. Tr. 30, 49-50. The record and plaintiff's testimony present no evidence of hospitalizations and no recommendations for back surgery or substantial treatment for pain. Tr. 50. Additionally, plaintiff's physical therapist, Tom Watson, DPT,

---

[1] Plaintiff also argues that the ALJ misconstrued the record when he found that Cymbalta was the best drug plaintiff had to combat her fibromyalgia symptoms, which he said was evidence of a good response to conservative treatment, when in fact, plaintiff stated that Cymbalta was the best drug for her pain outside of narcotics. Pl.'s Br. at 16. However, the ALJ wrote in his decision that Cymbalta was the best drug for plaintiff's pain other than narcotics; thus, the ALJ did not misrepresent the record. Tr. 30, 616.

noted in October 2009 that plaintiff "still reports pain but no objective findings to support the pain at this time." Tr. 460. Further, the ALJ relied on medical records noting that plaintiff reported her pain was a 3/10 at its worst and she was treating it with topical muscle rub and muscle relaxants. Tr. 27,431.

The ALJ's conclusion that plaintiff has undergone only conservative treatment for her allegedly severe pain is supported by substantial evidence in the record. Furthermore, even if plaintiff could show that she did not have an effective response to conservative treatment, such an error would be harmless in this case given that the ALJ provided numerous other valid reasons for discrediting plaintiff's testimony as to the severity of her pain and limitations, which support the validity of the ultimate credibility conclusion. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)(citations omitted).

The Court finds that the ALJ provided specific, clear, and convincing reasons for concluding that plaintiff's subjective testimony as to the severity of her pain and limitations is not fully credible. The ALJ identified the testimony that he did not find credible and relied on significant medical opinion evidence undermining plaintiff's alleged complaints, including the

opinions of treating and examining physicians opining on plaintiff's high level of strength and normal physical functioning, whom also suggested intentional or exaggerated behavior by plaintiff. See Burch v. Barnhart, 400 F.3d. 676, 680 (9th Cir. 2005). Thus, the ALJ provided a rational basis to support an adverse credibility finding despite plaintiff's somatization or conversion disorder. As a result, the Court may not engage in second-guessing. Thomas, 278 F.3d at 959. The ALJ's decision as to plaintiff's credibility is upheld.

## II. Opinion of Tyge Shelby, DC

Plaintiff contends that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for affording little weight to the opinion of her chiropractor, Tyge Shelby. Shelby treated plaintiff from 2009 through 2012 and his treatment notes are the primary source supporting the severity of plaintiff's alleged limitations.

The ALJ discounted Shelby's May 2010 opinion that plaintiff was limited to lifting 10 pounds and working no more than four hours per day, Tr. 28, 710, finding that Shelby is not an acceptable medical source. Tr. 29. The ALJ was correct in determining that Shelby is not an "acceptable medical source" to provide a medical opinion. 20 C.F.R. § 404.1513(d)(1).

Nonetheless, Shelby's opinion as to plaintiff's functional limitations should be considered, though it carries less weight than the treating and examining physicians that the ALJ relied on. Id.; 20 C.F.R. § 404.1527(c).

The Court finds that the ALJ provided a germane reason for affording little weight to Shelby's opinion, namely that Shelby's opinion is not indicative of plaintiff's overall functioning. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(quoting Dodrill, 12 F.3d at 919)). As discussed above, several acceptable medical sources in the record opined that plaintiff had full motor strength and exhibited high levels of strength in the lumbar spine. Tr. 28, 579, 727. The ALJ did not err in finding that the contradictory evidence from acceptable medical sources, including treating and examining physicians, outweighed Shelby's opinion. Thus, the Court finds that the ALJ did not commit reversible error with regard to the weight assigned to Dr. Shelby's opinion.

II.  New Evidence Admitted by Appeals Council

Plaintiff maintains that the new evidence she submitted for the first time to the Appeals Council was accepted into the record by the Appeals Council, and thus, must be included in this Court's review; this point is undisputed by defendant.

Def.'s Resp. 13, 15. In this case, the Appeals Council accepted
into the record and reviewed plaintiff's new evidence prior to
declining review of the ALJ decision. Tr. 1-2, 5. Thus, this
Court reviewed the administrative record as a whole, including
the new evidence that plaintiff submitted to the Appeals
Council.[2] Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157,
1163 (9th Cir. 2012); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th
Cir. 1993). The question remaining is whether the new evidence
supports remand to allow consideration by the ALJ.

A.    Opinion of Tyge Shelby, DC

Plaintiff contends that Shelby's June 2013 medical source
statement that plaintiff submitted to the Appeals Council was
probative medical evidence that undermined the ALJ's decision.
In the medical source statement, Shelby opines that plaintiff
would not be able to sustain full-time work and "based on [his]

---

[2] Regarding plaintiff's argument that the Appeals Council
erred when it denied plaintiff's request for review and did not
offer a substantive discussion of why it found that the new
evidence did not change the ALJ's decision, this Court has no
jurisdiction to review the Appeals Council's decision. Brewes,
682 F.3d at 1161; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d
1228, 1231 (9th Cir. 2011). Moreover, "'the Appeals Council
[was] not required to make any particular evidentiary finding'
when it rejected evidence from a vocational expert obtained
after an adverse administrative decision." Taylor, 659 F.3d at
1232 ("rejected" was used to mean the Appeals Council did not
find the new material persuasive enough to overturn the ALJ's
decision)(quoting Gomez v. Chater, 74 F.3d 967, 972 (9th Cir.
1996)).

conversations with [plaintiff] about her condition it is very probable that she would be absent from work well over three days [per] month." Tr. 774-75. As noted previously, plaintiff concedes that Shelby is not an acceptable medical source, but maintains that he is competent to provide an opinion on plaintiff's functional limitations arising from her impairments.

Defendant maintains that the new medical source statement by Shelby is not credible, is based on subjective statements from plaintiff, and does not overcome the contradictory medical evidence from acceptable medical sources reviewed by the ALJ. Further, defendant argues that Shelby's opinion was contradicted by the medical imaging from Central Oregon Radiology Associates. These imaging records, obtained approximately four months prior to Shelby's statement, show only mild degenerative changes in the cervical spine and lumbar spine. Tr. 771-72. Furthermore, defendant asserts that Dr. Henderson's IME examination in July 2012 found plaintiff to be "in very good health" with normal muscle bulk and tone in the upper and lower extremities, normal gait, 4.5/5 strength, and an unconfirmable fibromyalgia diagnosis with 9 out of 18 tender point sites positive. Tr. 726-27.

In determining whether to remand a case in light of new

evidence, the court examines whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier. 42 U.S.C. § 405(g); Mayes, 276 F.3d at 462. The Court agrees with defendant that the medical source statement drafted by plaintiff's attorney with minimal answers by Shelby, completed approximately one year after Shelby last treated plaintiff, does not negate the objective evidence from acceptable medical sources that contradict his opinion.

Additionally, "an opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). In the medical source statement Shelby writes, "I take Kim at her word and don't think she is faking her pain," indicating that his opinion is premised largely upon plaintiff's subjective reports of her pain and limitations, which the ALJ found not credible. Tr. 775. Further, Shelby opined that "Kim has significant spinal structural abnormalities along with arthritic and degenerative processes in the spine"; this assessment conflicts with both the weight of the evidence in the record and the most recent imaging studies

submitted to the Appeal's Council. Tr. 771-772, 775. Finally, Shelby's treatment notes that were submitted to the Appeal's Council are sufficiently similar to the treatment notes in the record reviewed by the ALJ to conclude that the new evidence plaintiff submitted to the Appeals Council would not have changed the ALJ's decision.

This Court finds that Shelby's medical source statement that plaintiff submitted for the first time to the Appeals Council does not warrant this case to be remanded for a new hearing, because it is cumulative evidence and poses no reasonable possibility of changing the outcome of the administrative hearing. Mayes, 276 F.3d at 462.

B.  Opinion of Sydnee Goldstein, MSW

Finally, plaintiff contends that the medical source statement by Sydnee Goldstein, MSW, which was submitted to the Appeals Council, is probative medical evidence that undermines the basis for the ALJ's decision. Plaintiff acknowledges that Goldstein is not an acceptable medical source, but maintains that she is competent to offer an opinion regarding the severity of plaintiff's impairments and how such impairments will affect plaintiff's ability to work.

Defendant contends that Goldstein's June 2013 opinion does

not change the fact that substantial evidence supports the ALJ's findings and decision. Further, defendant maintains that the marked limitations indicated by Goldstein in the medical source statement, written almost two years after plaintiff's last visit with her, do not have a basis in the treatment records.

Goldstein completed a medical source statement in June 2013 assessing plaintiff's functional limitations and noted that plaintiff's physical and mental problems would cause her to miss five days per month or more, and that plaintiff would be off task more than 30% of an eight-hour work day. Tr. 778-81. Goldstein had personally provided individual counseling services to plaintiff on several occasions in 2011 and was part of a team of mental health counselors who provided services to plaintiff.

The Court finds that Goldstein's medical source statement is not probative and is not material to the ALJ's decision given that Goldstein's counseling records from which she based her opinion were included in the record reviewed by the ALJ. Tr. 627, 631, 634, 636, 638, 639, 640. Moreover, the ALJ attributed significant weight to Dr. Whitehead's neuro-psychological evaluation of plaintiff, which contradicts Goldstein's opinion. Tr. 738-51. Further, the limitations identified by Dr. Whitehead after administering testing on plaintiff were included in the

ALJ's calculation of plaintiff's residual functional capacity. Tr. 26. Thus, the new evidence from Goldstein does not alter the substantial evidence supporting the ALJ's determination.

## CONCLUSION

The ALJ's finding that plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the Commissioner's decision is AFFIRMED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 22 day of September 2015.

_____
Ann Aiken
United States District Judge